# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30484

United States Court of Appeals
Fifth Circuit

**FILED**
January 4, 2017

Lyle W. Cayce
Clerk

LEE E. EDMISON, JR.; ROSEMARY EDMISON,

      Plaintiffs - Appellants

v.

CAESARS ENTERTAINMENT OPERATING COMPANY,
INCORPORATED, doing business as Harrah's New Orleans Casino;
SCHINDLER ELEVATOR CORPORATION; JAZZ CASINO COMPANY,
L.L.C.,

      Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-1521

Before DAVIS, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Lee and Rosemary Edmison appeal the district court's final judgment dismissing with prejudice their personal injury suit against Defendants-Appellees Caesars Entertainment Operating Company, Incorporated and Jazz Casino Company, LLC (collectively, "Caesars") and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30484

Schindler Elevator Corporation ("Schindler"), on Defendants-Appellees' motions for summary judgment. We affirm.

At approximately 3:15 a.m. on February 12, 2015, Lee Edmison fell down an escalator at Harrah's New Orleans Casino and sustained substantial injuries, including traumatic brain injury. A blood test taken at the hospital shortly after the accident showed his blood alcohol content to be 0.244 percent, more than three times Louisiana's legal limit for driving.

The Edmisons brought suit against Caesars as owner of Harrah's, alleging it was negligent in failing to upgrade the escalator in question with step-demarcation lines, among other things. They also sued Schindler as the manufacturer and servicer of the escalator, claiming Schindler was negligent for failing to recommend certain non-compulsory safety features that would have prevented Lee's injury.

Ceasars sought summary judgment, arguing the Edmisons were unable to prove two elements of their claim under Louisiana tort law's duty-risk analysis: (1) that the escalator contained a defect presenting an unreasonable risk of harm and (2) causation. Schindler likewise sought summary judgment, arguing that it did not breach its duty to Lee because it maintained a properly functioning, code-compliant escalator and that the lack of optional safety features did not cause Lee's injuries. The Edmisons opposed the motions, primarily arguing that whether the escalator created an unreasonable risk of harm was a question of fact for the jury, and that summary judgment was inappropriate because there was a dispute as to how Lee fell, why he fell, and whose fault it was that he fell. The district court granted summary judgment in favor of both Ceasars and Schindler, dismissing the Edmisons' suit with prejudice.[1]

---

[1] *Edmison v. Caesars Entm't Co., Inc.*, 177 F. Supp. 3d 972, 976 (E.D. La. 2016).

2

No. 16-30484

The Edmisons' premises liability claim against Caesars arises under La. Civ. Code arts. 2317 and 2322, while their general tort claim against Schindler arises under La. Civ. Code art. 2315.[2] As the district court explained, both claims generally rely on Louisiana's duty-risk analysis for torts, which essentially asks: "Was a duty owed? Was the duty breached? Did the breach of duty cause the plaintiff's harm?"[3] For a premises liability claim, the plaintiff must also prove that the alleged building defect was "unreasonably dangerous" under Louisiana's complex "risk-utility" analysis.[4] Notably, under risk-utility analysis, a premises owner "owes no duty to protect against an open and obvious hazard," i.e., one which "is open and obvious to everyone who may potentially encounter it."[5]

Although this analysis can be fairly complicated,[6] we agree with the district court that the outcome of this suit turns on either questions of law or undisputed questions of fact. As to the Edmisons' claim against Caesars, the district court held that the risk of an escalator is "open and obvious":

> It is no secret that the steps on an escalator move and eventually separate as they begin to go up or down. Anyone of ordinary prudence knows to pay attention when stepping on or off an escalator. It is obvious and apparent that if one fails to look down to see where the escalator steps are separating, one may fall. Even holding Caesars to a "high degree of care," "[t]he owner of a building is not responsible for all injuries resulting from any risk posed by the building." Using a normally-operating escalator, like using stairs or crossing the street, poses inherent, yet obvious risks. Even with its heightened standard of care, Caesars does not

---

[2] *Id.* at 976.

[3] *Id.* (citing *Broussard v. State ex. Rel. Office of State Buildings*, 12–1238 (La. 4/15/13); 113 So. 3d 175).

[4] *Id.* at 977 (citing *Broussard*).

[5] *Id.* at 978 (citing *Bufkin v. Felipe's Louisiana*, 14–0288 (La. 10/15/14); 171 So. 3d 851, 856).

[6] *See id.* at 976-78 (discussing *Broussard, Bufkin,* and *Allen v. Lockwood,* 14-1724 (La. 2/13/15); 156 So. 3d 650).

have a duty to add any and all safety features that may or may not prevent injury.[7]

Accordingly, the district court concluded that Caesars owed no duty to protect against the risk by adding the safety features urged by the Edmisons.[8]

The district court also found that the escalator was not dangerous as a matter of law based on the undisputed evidence:

> The escalator in compliance with the relevant safety codes. It was operating normally; it was not malfunctioning. It is clear from the video footage that many people used the escalator without hazard in the minutes immediately before the plaintiff's fall. Both plaintiffs testified that they were frequent visitors of Harrah's Casino and had used the tunnel escalators perhaps 100 times before without incident. Caesars estimates that 600,000 people used the escalator in the six month period before the plaintiff's fall. There were three reported accidents during that time.[9]

In sum, nothing in the record suggests that the escalator was unreasonably dangerous; indeed, the court noted that "the most unreasonably dangerous conduct on this record is the plaintiff's own heavy alcohol consumption."[10] We find no error in the district court's reasoning.

As to the Edmisons' general tort claim against Schindler, the parties agreed "that Schindler owed a duty of reasonable care to maintain and service the escalator under its contract with Caesars."[11] The district court explained that Schindler did not have a duty to ensure that the escalators were "as safe as possible," however, only "to exercise reasonable care in the maintenance and service of the escalators."[12] It concluded that Schindler had not breached that

---

[7] *Id.* at 979 (footnotes and citation omitted).

[8] *Id.*

[9] *Id.* (footnote omitted).

[10] *Id.* at 980.

[11] *Id.* (citing *Rabito v. Otis Elevator Co.*, 93–1001 (La. App. 4 Cir. 12/15/94); 648 So.2d 18, 19).

[12] *Id.* at 981.

## No. 16-30484

duty as a matter of law because the undisputed record evidence showed that the "escalator complied with the safety requirements and was not malfunctioning at the time of the accident."[13] Again, we find no error in the district court's reasoning.

Because we conclude that the Edmisons' claims against Caesars and Schindler must fail as a matter of law, we affirm the district court's final judgment dismissing their suit with prejudice.

AFFIRMED.

---

[13] *Id.*